**UNITED STATES of America ex rel Linda Gail PHILLIPS, and Linda Gail Phillips, Plaintiffs,**

v.

**PEDIATRIC SERVICES OF AMERICA, INC.; Harris Regional Hospital, Inc., and PSA/HRH, LLC, Defendants.**

No. 3:97 CV 360–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 30, 2000.

Thomas D. Roberts, Asheville, NC, for Linda Gail Phillips, plaintiff.

Frank D. Whitney, AUSA, U.S. Attorney's Office, Charlotte, NC, for USA, ex rel., plaintiff.

Isaac N. Northup, Northup & McConnell, PLLC, Asheville, NC, for Pediatric Services of America, Inc., PSA/HRH, defendants.

W. Bradford Searson, Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, NC, Dale A. Curriden, Asheville, NC, for Harris Regional Hospital, Inc., defendant.

### ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on Motions to Dismiss Pursuant to Rule 12(b)(6) filed by Harris Regional Hospital, Inc., PSA/HRH, LLC, and Pediatric Services of America, Inc. ("PSA") [documents 8 and 12]. Finding Defendants' contentions without merit, this Court will deny those motions.

### I. Factual and Procedural Background

In June 1997, *qui tam* Plaintiff Linda Gail Phillips, a former PSA employee, filed a complaint under seal alleging that Defendants committed violations of the False Claims Act ("FCA") related to claims submitted by Defendants for Medicare coverage of home oxygen therapy. The essence of Phillips' claim is that Defendants misrepresented on medicare coverage forms that certain medical data required to be completed by a patient's physician had been completed by a physician. Phillips alleges that the data had actually been completed by a PSA employee who was not a physician in contravention of Medicare conflict of interest rules. Phillips served her complaint on the government, as required under the FCA. The government elected not to intervene, but preserved the right for future intervention if the resolution of legal issues carried an impact beyond the four corners of the instant case. After the case was unsealed, Defendants each moved to dismiss the suit pursuant to Rule 12(b)(6) asserting that the *qui tam* provision of the FCA is unconstitutional as applied in this dispute.

The FCA imposes civil liability on "any person" who, *inter alia*, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ..." 31 U.S.C. § 3729. An action under the FCA may be commenced in one of two ways. "First, the Government itself may bring a civil action against the alleged false claimant. § 3730(a). Second, as is relevant here, a private person (the "relator") may bring a *qui tam* civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.' § 3730(b)(1)." *Vermont Agency of*

*Natural Resources v. United States ex rel. Stevens,* 529 U.S. 1858, 120 S.Ct. 1858, 1860, 146 L.Ed.2d 836 (2000).

Defendants challenge the constitutionality of the *qui tam* provisions of the FCA by raising the following issues in their motions to dismiss:

(1) Whether allowing a plaintiff to maintain a cause of action as a *qui tam* relator under the FCA violates the Take Care Clause or the Appointments Clause and therefore the doctrine of separation of powers; and

(2) Whether Phillips' pecuniary interest in a suit brought in part on the government's behalf violates principles of due process.

## II. Analysis

### a. Separation of Powers

The doctrine of separation of powers requires that the various powers of the government must be separated and assigned to coordinate branches of government. This fundamental principle was introduced by the framers, "aware that concentration of power breeds tyranny," and repeatedly reaffirmed by the Supreme Court. *U.S. ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 749–750 (9th Cir. 1993). The doctrine is violated when one branch within our tripartite government impermissibly undermines or interferes with the constitutionally assigned powers of another. *See Clinton v. Jones,* 520 U.S. 681, 701, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).

### i. Take Care Clause

Section 3 of Article II of the Constitution entrusts the Executive with the responsibility to "take care that the Laws be faithfully executed." This responsibility includes the authority to investigate and litigate offenses against the United States. *Buckley v. Valeo,* 424 U.S. 1, 138, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). An act of congress "impermissibly undermines" these functions of the Executive when it renders the President unable to perform his constitutionally assigned duties. *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 443, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

The Supreme Court's most thorough analysis of the Take Care Clause as it relates to Congressional intrusion into the province of the Executive is found in *Morrison v. Olson,* 487 U.S. 654, 696, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). In *Morrison,* the Court upheld the constitutionality of the independent prosecutor provisions of the Ethics in Government Act on the basis that the Executive retained sufficient control over the prosecutorial process. *Id.* at 696, 108 S.Ct. 2597. In reaching this conclusion the Court relied on the fact that under the Act (1) the Executive retained the power to remove the independent counsel for cause, (2) that an independent counsel would only be appointed if requested by the Attorney General, (3) the independent counsel's power to prosecute is limited to the scope requested by the Attorney General, and (4) the independent counsel's adherence to Justice Department policy. *Id.*

Defendants argue that these facets of the independent counsel provision establish the minimum amount of control the Executive must retain over litigation of offenses against the United States to avoid a violation of the doctrine of separation of powers. Consequently, Defendants urge this Court to compare the *qui tam* provisions point-by-point to the precise means of control identified in *Morrison.* Defendants conclude that the absence of one or more of the controls emphasized in *Morrison* demonstrates that the FCA is unconstitutional.

However, the Supreme Court did not intend the analysis in *Morrison* to serve as an unalterable list of the minimum control elements necessary for sustaining all acts implicating the Take Care Clause. On the contrary, by twice stating that the proper inquiry was to take the act "as a whole,"

"*Morrison* instructs us to compare the *qui tam* provisions 'as a whole' to the independent counsel provisions 'as a whole.'" *Kelly,* 9 F.3d at 752 (quoting *Morrison,* 487 U.S. at 685, 693, 108 S.Ct. 2597).

█ When compared *in toto* to the independent counsel provision, the *qui tam* provisions clearly pass constitutional muster. As the Ninth Circuit explained:

> Under the FCA, the Executive Branch can control a qui tam relator's exercise of prosecutorial powers in several ways. The government can intervene in a case and then take primary responsibility for prosecuting the action; it can seek judicial limitation of the relator's participation; it can move for dismissal of a case which it believes has no merit, after notice to the relator and opportunity for a hearing; it can seek a judicial stay of the relator's discovery regardless of whether it intervenes; and it remains free to seek any alternate remedies available, including through any administrative proceeding.

*Kelly,* 9 F.3d at 753 (footnote and citation omitted). In addition, the relator may not dismiss the suit voluntarily unless the Attorney General consents to such action. *See* 31 U.S.C. § 3730(b)(1).

It is true that, unlike the independent counsel provision, a *qui tam* relator is entitled to notice before the government may move for a voluntary dismissal and the relator not the government decides whether to initiate the suit. However, if the government seeks direct control over the prosecution of the suit it may intervene. Otherwise, the relator may continue the suit in the government's name and for the government's benefit. This authority to intervene and manage the suit clearly gives the government sufficient control to avoid the impermissible undermining contemplated in *Morrison.*

Furthermore, *qui tam* actions must be considered in their historical context. *Qui tam* actions originated from "thirteenth-century common law as a method by which to supplement the power of the crown ... and migrated to this side of the Atlantic along with other elements of English law and custom." *Riley v. St. Luke's Episcopal Hosp.,* 196 F.3d 514, 545 (5th Cir.1999) (*en banc* review pending) (Stewart, J., dissenting).[1] Not surprisingly, our early legislatures made liberal use of *qui tam* statutes in an effort to buttress the fledgling government's ability to enforce the laws. *Id.* In 1863, Congress enacted the FCA as a means of combating widespread corruption and fraud by companies supplying the Union army. *Id.* at 546. Indeed, it was President Lincoln who suggested that the *qui tam* provisions be inserted into the Act. *Id.*

Although *qui tam* actions have fallen in and out of favor since their inception, their history is enduring and relevant to the constitutional challenges asserted by Defendants.[2] Indeed, it cannot be gainsaid that our founders considered *qui tam* actions integral to self-government and valid under the Constitution.

#### ii. Appointments Clause

The Appointments Clause provides that the President:

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the

---

1. Judge Stewart gives a broad historical overview of *qui tam* actions and suggests that the history of these provisions "should guide our understanding of their relationship to the constitutional proscriptions of the Take Care Clause."

2. Importantly, in his dissent in *Stevens,* Justice Souter found this historical evidence sufficient to dispose of all Article II challenges to the FCA.

appointment of such inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, section 2, cl. 2.

Defendants contend that in enacting the *qui tam* provisions of the FCA, Congress has impermissibly appointed private parties to fulfill the executive function of litigating cases on behalf of the government. As authority for this novel proposition, Defendants cite *Buckley v. Valeo,* 424 U.S. 1, 143, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), which held that the Federal Election Commission ("FEC") could not constitutionally engage in law enforcement traditionally dedicated to the Executive because Congress had taken part in appointing its members.

Under *Buckley,* persons who are not appointed in a manner consistent with the Appointments Clause may not discharge functions properly discharged only by "officers." 424 U.S. at 140, 96 S.Ct. 612. However, "officers" are not defined by the Constitution. Consequently, the *Buckley* court enunciated a test for this determination asking whether the person at issue "exercis[es] significant authority pursuant to the laws of the United States." *Id.* at 126, 96 S.Ct. 612. The Court then voided those statutory provisions vesting in FEC members the "primary responsibility" for conducting civil litigation on behalf of the public good. *Id.* at 140, 96 S.Ct. 612.

■ The *qui tam* provision of the FCA does not vest relators with governmental authority and, therefore, they are not Article II "officers." This conclusion is supported by the historical evidence set forth in the previous subsection and precedent from the Ninth Circuit. *See Kelly,* 9 F.3d at 758. As the *Kelly* court stated:

[*qui tam* relators] conduct litigation under the FCA with only the resources of private plaintiffs. Furthermore, relators have no greater authority to enforce the FCA than does the Attorney General, and under the terms of the statute

must yield to the government's assumption of 'primary responsibility' when it elects to intervene in a qui tam action. When the government does not intervene, a relator retains primary responsibility for the litigation, thus presenting what may seem a close question under *Buckley;* but even in that situation, the relator's responsibility only extends to a single case, and the relator's activities can still be limited by the court upon request of either the government or the defendant.

9 F.3d at 758 (citations and footnote omitted).

The FCA poses no threat to the interest of a balanced government which underlies the Appointments Clause. Accordingly, it does not violate the doctrine of separation of powers.

### b. Due Process.

Defendants assert that the acute financial interest of the *qui tam* relator is in direct conflict with the public duty owed by governmental prosecutors and that this conflict of interest violates the principles of due process. In *Marshall v. Jerrico,* 446 U.S. 238, 249–50, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), the Court stated that a "scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." 446 U.S. at 249–250, 100 S.Ct. 1610. However, the Court found no due process violation in the Fair Labor Standards Act ("FLSA") in part because prosecutors under that Act had only a remote financial incentive. *Id.* at 250, 100 S.Ct. 1610.

Defendants are correct that the *qui tam* relator's interest is more proximate and concrete than a prosecutor's pecuniary interest under the FLSA. Thus, at first blush, it appears that the FCA presents a more compelling case of a due process violation. However, *qui tam* relators are essentially private plaintiffs and are not

equipped with machinery of government. *See Kelly,* 9 F.3d at 760. Therefore, they do not owe the same type of duty to serve the public interest as government prosecutors. *Id.*

■ Furthermore, it is again appropriate to accord considerable weight to the government's historical reliance on *qui tam* actions. While such history does not exempt *qui tam* actions from constitutional scrutiny, it does carry an almost presumptive force against an attack to their validity. Defendants have failed to produce the persuasive authority necessary to overcome this historical evidence. Accordingly, this Court will not strike down the *qui tam* provisions of FCA.

**NOW, THEREFORE, IT IS OR-DERED** that Defendants' Motions To Dismiss be, and hereby are, **DENIED.**